IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ECONOMY PREMIER ASSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 08-cv-082 |
| v. | ) ) | |
| THOMAS A. FAIRFULL, DONNA FAIRFULL, HILLARY FAIRFULL and SAMANTHA PRODANOVICH, a Minor, By and through her parents, and Natural Guardians, TINA MCDONNELL and CHARLES PRODANOVICH, Defendants. | ) ) ) ) ) ) ) ) | |

MEMORANDUM OPINION

CONTI, District Judge

**Introduction**

Pending before this court is a motion for summary judgment which raises insurance

coverage issues.  Plaintiff Economy Premier Assurance Company ("Economy Premier") initiated

this action by filing a declaratory judgment complaint against defendants Thomas Fairfull, Donna

Fairfull and Hillary Fairfull (collectively, "Fairfull Defendants") and Samantha Prodanovich, by

and through her parents and natural guardians, Tina McDonnell and Charles Prodanovich

(collectively, "Prodanovich Defendants").[1]  Economy Premier commenced this action pursuant to

the Declaratory Judgment Act, 28 U.S.C. § 2201(a), seeking a declaration that it has no duty to

_____

[1]      When referring to the Fairfull Defendants and the Prodanovich Defendants
collectively, the court will refer to them as "Defendants."

defend or indemnify the Fairfull Defendants in underlying litigation brought against them by the Prodanovich Defendants in the Court of Common Pleas of Westmoreland County, Pennsylvania (the "Prodanovich litigation").  (Doc. No. 1).  Pending before the court is Economy Premier's motion for summary judgment. (Doc. No. 35).  For the following reasons, the motion will be granted.

## Factual Background

### *The Underlying Prodanovich Litigation*

Thomas and Donna Fairfull live at 105 Oak Drive in Trafford, Pennsylvania (the "Fairfull residence").  (Doc. No. 37, Ex. D at 6).  In June 2003, the Fairfull's daughter, Hillary Fairfull lived with her parents at their residence. (Doc. No. 37, Ex. D at 35-36).  At that time, Hillary Fairfull owned a dog that she kept at her parents' home.  (Doc. No. 51 ¶¶ 5-6).  Donna Fairfull testified that the dog, named Gemini, was kept indoors and outdoors.  (Doc. No. 37, Ex. D 54-55).

Defendant Donna Fairfull watched children in her residence on a regular basis, Monday through Friday.  (Doc. No. 51 ¶ 21).  She testified at her deposition that childcare services were provided in her home approximately eight hours per day.  (Doc. No. 51 ¶ 22).  She was paid for her services by cash or check.  (Doc. No. 51 ¶¶ 22, 26).  Prior to 2003, Donna Fairfull was not an incorporated entity, nor was she licensed by the Commonwealth of Pennsylvania to provide childcare services.  (Doc. No. 51 ¶ 24).  She, however, reported her income to the Internal Revenue Service.  (Doc. No. 51 ¶ 26).

Donna Fairfull watched children in her home for approximately ten years prior to the commencement of the litigation underlying this action.  (Doc. No. 51 ¶ 21).  At her deposition in 2005, she testified:

> Q.    Now, from 1990 to 2003, were you baby-sitting during that time period or were you doing other jobs?
> A.    Baby-sitting.
> Q.    When did you first start baby-sitting?
> A.    About 15, 16 years ago.
> Q.    Were you running it out of the 105 Oak Drive address?
> A.    Yes.
> Q.    What are the range of ages of children that you watch?
> A.    Sometimes I have a baby, a young– you know, a real small one; and usually when they reach – finish 5th grade, then they no longer need baby-sitting.

(Doc. No. 37, Ex. D at 8-9).  In June 2003, Donna Fairfull watched six or seven children in her home at one time, ranging in age from three to twelve years old.  (Doc. No. 51 ¶ 25).  During her deposition, she testified that she regularly baby-sat these children:

> Q    . ... In 2003, particularly June of 2003, do you recall who were the children that were at the home?
> A.    It was Samantha [Prodanovich], [N.S.], [V.M.], [S.B.], [N.M.], and [S.S.].
> Q.    Now, how long had all these children been baby-sat by you?
> A.    Most of them, you know, from the time they were little, newborn, you know, real young. Most of those children, except for Samantha [Prodanovich], she was older.
> Q.    And were these children that were regularly on the property in 2003, particularly June of 2003?
> A.    Yes.

(Doc. No. 37, Ex. D at 14).

In September  2002, defendant Tina McDonnell began having Donna Fairfull baby-sit her two children, including plaintiff Samantha Prodanovich, at Donna's Fairfull home before and after school.  (Doc. No. 51 ¶ 28).  Defendant Tina McDonnell testified that she paid Donna Fairfull weekly to watch her children.  (Doc. No. 51 ¶ 29).  She testified that Donna Fairfull

regularly watched Samantha and her son Monday through Friday, both before and after school. (Doc. No. 51 ¶ 30).

Donna Fairfull baby-sat Samantha Prodanovich on June 5, 2005.  (Doc. No. 51 ¶ 19). There were four children in her home on that date for whom she was providing childcare services.  (Doc. No. 51 ¶ 20).  The Prodanovich Defendants allege that, on that date, Samantha Prodanovich was injured in the Fairfull residence when she was bitten by Hillary Fairfull's dog. (Do. No. 51 ¶ 3).  Donna Fairfull testified that Samantha Prodanovich was at the Fairfull residence at the time of this incident for the  purpose of receiving childcare services from Donna Fairfull.  (Doc. No. 51 ¶ 19).

In 2005, defendants Tina McDonnell and Charles Prodanovich, as parents and natural guardians of Samantha Prodanovich, commenced the Prodanovich litigation giving rise to the instant litigation.  (Doc. No. 51 ¶ 3).  The complaint in the Prodanovich litigation (the "Prodanovich complaint") seeks compensation and damages from the Fairfull Defendants for injuries allegedly sustained by Samantha Prodanovich when she was bitten by a dog at the Fairfull residence.  (Doc. No. 51 ¶ 3).[2]

The Prodanovich complaint contains three separate counts.  (Doc. No. 37, Ex. A).  Count one asserts a claims for negligence against defendant Hillary Fairfull by Samantha Prodanovich. (*Id*. ¶¶ 18-20).  Count two asserts a claim for negligence against defendants Thomas Fairfull and

---

[2]

The Fairfull Defendants deny several allegations in the Prodanovich complaint and deny liability for Samantha Prodanovich's injuries.  (*See* Doc. No. 53 ¶¶ 5-17.)  Because the issue in this litigation is whether or not Economy Premier has a duty to defend or indemnify the Fairfull Defendants in the Prodanovich litigation, the court need not address liability, but will rather discuss the allegations in the Prodanovich complaint as they pertain to issues of coverage.

Donna Fairfull by Samantha Prodanovich.  (*Id*. ¶¶ 21- 23).  Count three asserts a claim for

negligence against all three Fairfull Defendants by Charles Prodanovich and Tina McDonnell.

(*Id*. ¶¶ 24-25.)

With respect to the Fairfull Defendants, the Prodanovich complaint contains a specific

allegation that, on the date of the dog bite, Samantha Prodanovich, age eight, was allowed to play

in the Fairfull Defendants' basement and had their permission to do so.  (Doc. No. 37, Ex. A ¶¶

4- 5).  The complaint set forth allegations that, on or about June 5, 2003, Samantha Prodanovich

"was an invited guest of Defendants, Thomas Fairfull and Donna Fairfull, on their premises

located at 105 Oak Road, Westmoreland County . . . and was playing in their basement with their

consent and permission."  (Doc. No. 37, Ex. A ¶ 10).  The Prodanovich complaint contains the

following allegations:

> 11.   At or about the same time, Defendants, Thomas Fairfull and Donna
> Fairfull, allowed Defendant Hillary Fairfull's dog on their property
> and kept it in the same basement where minor was playing.

> 12.   Defendants Thomas Fairfull and Donna Fairfull did not provide adult
> supervision when minor Plaintiff was in their basement on the above
> date even though they were keeping co-Defendant Hillary Fairfull's
> dog there, which they knew or should have known that it had a
> dangerous propensity to be vicious, ferocious, aggressive, and prone
> to attack and/or bite people, in the same basement.

> 13.   Defendants Thomas Fairfull and Donna Fairfull also failed to prohibit
> children from entering the basement when co-Defendant Hillary
> Fairfull's dog was kept in the basement, even though they knew or
> should have known that said animal had a dangerous propensity to be
> vicious, ferocious, aggressive, and prone to attack and/or bite people.

> 14.   On the above stated date, Defendant Hillary Fairfull knew her dog
> had a dangerous propensity to be vicious, ferocious, aggressive, and
> prone to attack and/or bite people, and that the dog was on the co-
> Defendants' property and knew or should have known that it was kept

in their basement with the minor Plaintiff or had access to said minor
Plaintiff.

15.    While minor Plaintiff, Samantha Prodanovich played in the
Defendants Thomas Fairfull's and Donna Fairfull's basement,
Defendant Hillary Fairfull's Chow/Akita dog suddenly and without
warning, attacked minor Plaintiff, without provocation, biting her left
cheek, her chin and her left jaw line.

(Doc. No. 37, Ex. A ¶¶ 11-15).

In the Prodanovich litigation the Prodanovich Defendants seek damages for Samantha

Prodanovich's injuries, including cost of surgical and medical attention, hospitalization, medical

supplies, medicines and services in an effort to cure Samantha Prodanovich and compensation

for Charles Prodanovich and Tina McDonnell for the loss of the services of their child, Samantha

Prodanovich.  (Doc. No. 37, Ex. A ¶ 25).

### The Economy Premier Homeowner's Policy

The Fairfull Defendants procured a homeowner's insurance policy from Met Life[3]

through the assistance of an insurance agent.  (Doc. No. 51 ¶ 31).  Economy Premier issued a

VIP Plus homeowner's policy of insurance to Thomas Fairfull, bearing policy number

1604092620 (the "2003 policy").  (Doc. No. 51 ¶ 35).[4]  The 2003 policy was effective for the

policy period of September 20, 2002 through September 20, 2003.  (Doc. No. 51 ¶ 35).

---

[3]

Met Life, Inc. is the corporate parent of Economy Premier. (Doc. No. 2).

[4]

In their response to Plaintiff's concise statement of undisputed and material facts, the Fairfull
Defendants deny that exhibit D to Plaintiff's concise statement of undisputed and material facts (*see*
Doc. No. 37, Ex. D) is a true and correct copy of the policy at the time of the claim. (Doc. No. 53
¶ 35).  The Fairfull Defendants, however, failed to introduce evidence to the contrary.  Therefore,
paragraph 35 of Plaintiff's concise statement of undisputed and material facts is deemed admitted.

The declaration page lists the insured property as the Fairfull residence, at 105 Oak Road

Trafford, Pennsylvania, and Thomas Fairfull as the named insured.  (Doc. No. 37, Ex. F).  The

policy provided coverage for personal liability as follows:

### Section II- LOSSES WE COVER

**COVERAGE F- PERSONAL LIABILITY**
We will pay all sums for **bodily injury** and **property damage** to others for which
the law holds you responsible because of an **occurrence**.  This includes prejudgment
interest awarded against **you**.

We will defend **you**, at our expense with counsel of **our** choice, against any suit or
claim seeking these damages.  We may investigate, negotiate, or settle any suit or
claim.

We are not obligated to pay any claim or judgment or defend any suit if we have
already exhausted the limit of liability set forth in the Declarations by paying
judgments of settlements.

(Doc. No. 37, Ex. F  at 16).  The policy contained, in relevant part, the following exclusions with

respect to coverage  for personal liability:

### Section II- LOSSES WE DO NOT COVER

**UNDER COVERAGE F- PERSONAL LIABILITY AND COVERAGE G- MEDICAL
PAYMENTS TO OTHERS, WE DO NOT COVER:**

...

2.    **bodily injury** or **property damage** arising out of or in connection
with **your business** activities.  This exclusion applies but is not
limited to an act or omission, regardless of its nature or
circumstance, involving a service or duty rendered, promised,
owed, or implied to be provided because of the nature of the
**business**.

With respect to Coverage F- Personal Liability, this exclusion does
not apply to your occasional or part-time **business** activities if **you**

are under 19 years of age or a full-time students under 21 years of age.

3.   your legal liability to any person resulting from **your** regular care of one or more persons anywhere for economic gain and regardless of whether such care or premises is licensed or not. The mutual exchange of home day care services is not considered to be for economic gain. This exclusion does not apply to **your** occasional care or babysitting.

(*Id*. at 17).

The policy included the following relevant definitions:

## GENERAL DEFINITIONS

The following words and phrases appear repeatedly throughout this policy.  They have a special meaning and are to be given that meaning whenever used in this policy or any endorsement which is part of this policy:

"**BODILY INJURY**" means any bodily harm, sickness or disease. This term includes required care, loss of services and death if it is a result of such bodily harm, sickness or disease.

. . .

"**BUSINESS" or "BUSINESS PURPOSES**" means:
   1.  Any full or part time activity of any kind engaged in for economic gain, and the use of any part of any premises for such purposes.

...

"**WE," "US,**" and "**OUR,**" mean the Company named in the Declarations.

"**YOU**" and "**YOUR**" mean:
   1.      the person or persons named in the Declarations and if a resident of the same household:
           A.  the spouse of such person or  persons;
           B.  the relatives of either;
           C.  any other person under the age of twenty-
               one in the care of any of the above; . . . .

8

(*Id.* at 1-2).

### *Economy Premier's Declaratory Judgment Action*

Economy Premier filed a complaint in declaratory judgment against Defendants on January 18, 2008.  (Doc. No. 1).  In the complaint Economy Premier alleges that it undertook to defend the Fairfull Defendants in the Prodanovich litigation.  (Doc. No. 1 ¶ 19).   It alleges that it agreed to defend the Fairfull Defendants under a reservation of rights.[5]  (Doc. No. 1 ¶ 20). Economy Premier filed the motion for summary judgment, which is the subject of this opinion, seeking a declaration from the court that it has no duty  to continue to defend or to indemnify the Fairfull Defendants in the Prodanovich litigation.


### Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c).  A motion for summary judgment will not be defeated by the mere existence of some disputed fact, but will be defeated when there is a genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of

---

[5]        The reservation of rights letter was not made a part of the record.

the matter, but only to determine whether the evidence of record is such that a reasonable jury

could return a verdict for the nonmoving party.  *Id*. at 249.

### Discussion

#### *Choice of Law*

According to the complaint in declaratory judgment filed in this action, Economy Premier

is a corporation organized and existing under the laws of the State of Illinois, having its principal

place of business in Rhode Island.  (Doc. No.1 ¶ 1).  Defendants are individual citizens of

Pennsylvania.  (Doc. No. 1 ¶¶ 2-5).  The amount in controversy in this matter exceeds $75,000.

(Doc. No. 1 ¶ 6).  Jurisdiction is proper under 28 U.S.C. §1332(a)(1) based upon diversity of

citizenship.  District courts sitting in diversity jurisdiction must apply the substantive law of the

forum state, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), including its choice of law rules.

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  As the parties implicitly agree

that Pennsylvania  substantive law applies in this case, the court will analyze the issues raised

under Pennsylvania law.  *See Rochez Bros., Inc. v. North Am. Salt Co., Inc.*, Civ. A. No.

9401141, 1994 WL 735932, at *6 n.8 (W.D. Pa. 1994) (citing *Schiavone Constr. Co. v. Time,

Inc.*, 735 F.2d 94, 96 (3d Cir. 1984)).

#### *Arguments Presented*

Economy Premier seeks a declaration from the court that it is not obligated to defend or

indemnify the Fairfull Defendants based upon the language of the policy.  (Doc. No. 1).

Specifically, the complaint alleges that two exclusions in the policy preclude coverage.  (Doc.

No. 1 ¶¶ 24-27).  Economy Premier points to the following policy language:

10

**Section II- LOSSES WE DO NOT COVER**

**UNDER COVERAGE F- PERSONAL LIABILITY AND COVERAGE G- MEDICAL PAYMENTS TO OTHERS, WE DO NOT COVER:**

...

2. **bodily injury** or **property damage** arising out of or in connection with **your business** activities.  This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the **business**.

   With respect to Coverage F- Personal Liability, this exclusion does not apply to your occasional or part-time **business** activities if **you** are under 19 years of age or a full-time students under 21 years of age.[6]

3. **your** legal liability to any person resulting from **your** regular care of one or more persons  anywhere for economic gain and regardless of whether such care  or premises is licensed or not. The mutual exchange of home day care services is not considered to be for economic gain. This exclusion does not apply to **your** occasional care or babysitting.[7]

(Doc. No. 37, Ex. F at 17).

Economy Premier argues that, under Pennsylvania law, the business pursuits exclusion precludes coverage in this case because Samantha Prodanovich's injuries arose as a result of Donna Fairfull's business pursuits.  Economy Premier also argues that, because Samantha Prodanovich's injuries arose as a result of Donna Fairfull's providing regular childcare, the day care exclusion precludes coverage for the Prodanovich litigation.

---

[6]

This exclusion will be referred to as the "business pursuits exclusion."

[7]

This exclusion will be referred to as the "day care exclusion."

11

In response, Defendants argue that the business pursuits and day care exclusions do not apply to the defense or indemnification of the Prodanovich litigation because Samantha Prodanovich's injuries did not arise from the childcare services of Donna Fairfull and were not related to the operation of her childcare business.[8]   Defendants argue that Economy Premier is required to defend and indemnify the Fairfull Defendants in the entire underlying litigation because there are counts in the Prodanovich complaint not related to Donna Fairfull's childcare services, i.e., those counts refer only to the Fairfull Defendants' negligence related to ownership of a dog.  Defendants argue in the alternative that coverage is not precluded because defendants Thomas Fairfull and Hillary Fairfull were not involved in the operation of Donna Fairfull's childcare business and are not precluded from coverage under the policy.

### Pennsylvania Law of Construction

The terms of the insurance policy must be construed to determine whether coverage exists here.  Under Pennsylvania law, the "'interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court.'" *Gardner v. State Farm Fire and Cas. Co.*, 544 F.3d 553, 558 (3d Cir. 2008) (quoting *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007)).  In interpreting an insurance policy, it is the court's duty to determine the intent of the parties "as manifested by the language of the written agreement."  *Travelers Cas. & Sur. Co. v. Castegnaro*, 772 A.2d 456, 459 (Pa. 2001); *see 401*

---

[8]

The Prodanovich Defendants filed a separate brief in response to Economy Premier's motion for summary judgment from the Fairfull Defendants.  (*See* Doc. Nos. 43 and 49.)  The Fairfull Defendants in their brief in opposition to summary judgment (Doc. No. 49), stated they concur with the Prodanovich Defendant's argument in opposition to the motion for summary judgment and make no other argument.  (Doc. No. 49 at 5.)

*Fourth St., Inc. v. Investors Ins. Group*, 879 A.2d 166, 171 (Pa. 2005) (citing *Gene & Harvey Builders, Inc. v. Pa. Mfrs.' Assoc. Ins. Co.*, 517 A.2d 910, 913 (Pa. 1986)).  In construing the terms of an insurance policy, the court must read the policy in its entirety, giving effect to all the policy's language. *Curbee, Ltd. v. Rhubart*, 594 A.2d 733, 735 (Pa. Super. Ct. 1991) (holding that "[a]n interpretation of an exclusion clause must be based on a reading of the policy in its entirety, giving the words thereof their plain and proper meaning"); *see 401 Fourth St., Inc.*, 879 A.2d at 171 (noting that, the court must not consider "merely individual terms utilized in the insurance contract, but the entire insurance provision to ascertain the intent of the parties").

When construing the language of a policy, the court is also required to give effect to the reasonable expectations of the insured.  *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 903 (3d Cir. 1997).  "An insured, however, may not complain that its reasonable expectations have been frustrated when the applicable policy limitations are clear and unambiguous." *Millers Capital Ins. Co. v. Gambone Bros. Dev. Co., Inc.*, 941 A.2d 706, 717 (Pa. Super. Ct. 2007) (citing *Bubis v. Prudential Prop. & Cas. Ins. Co.*, 718 A.2d 1270, 1272 (Pa. Super. Ct. 1998)).

When the language of the insurance policy is clear and unambiguous, the court must give effect to that language.  *Baumhammers*, 938 A.2d at 290 (citing *Kvaener Metals Div. v. Commercial Union Ins. Co.*, 908 A.2d 888, 893 (Pa. 2006)); s*ee O'Conner- Kohler v. United Servs. Auto. Ass'n*, 883 A.2d 673, 679 (Pa. Super. Ct. 2005) (quoting *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982) (holding that, "'[w]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone'").  "However, 'when a provision in the policy is ambiguous, the policy is to be construed in favor of the insured to further the contracts [sic]

13

prime purpose of indemnification and against the insurer, as the insurer drafts the policy and controls coverage.'" *Baumhammers*, 938 A.2d at 290 (quoting *Kvaener*, 908 A. 2d at 897).

An ambiguity exists in the policy language when there is more than one possible interpretation or "'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.'" *401 Fourth St.*, 879 A.2d at 171 (quoting *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999), which quoted *Hutchinson v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986)); *Castegnaro*, 772 A.2d at 459.  The language of the insurance policy "should not be tortured to create an ambiguity." *Curbee, Ltd.*, 594 A.2d at 735 (citing *Jefferson v. State Farm Ins.*, 551 A.2d 283, 284 (Pa. Super. Ct. 1988); *Monti v. Rockwood Ins. Co.*, 450 A.2d 24, 25 (Pa. Super. Ct. 1982)).  An ambiguity will not exist merely because the parties do not agree on construction, rather "[c]ourts should read policy provisions to avoid an ambiguity if possible."  *O'Conner-Kohler*, 883 A.2d at 680 (citing *Neuhard v. Travelers*, 831 A.2d 602, 604-05 (Pa. Super. Ct. 2003)).  "'The polestar of our inquiry, therefore, is the language of the insurance policy.'" *Id*. at 679 (quoting *Neuhard*, 831 A.2d at 605).

### *Whether Economy Premier Has a Duty to Defend the Fairfull Defendants in the Prodanovich Litigation*

In the complaint Economy Premier alleges that, while it agreed to defend the Prodanovich litigation on behalf of the Fairfull Defendants under a reservation of rights, its duty to defend is nullified due to the application of the business pursuits exclusion and the day care exclusion provisions of the policy. (Doc. No. 1 ¶¶ 19-27).  An insurer's duty to defend is triggered by the language of the underlying complaint against the insured.  *Kvaerner Metals Div.*, 908 A.2d at

14

896 (citing *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743. 745 (Pa. 1999)).  "If the complaint

against the insured avers facts that would support a recovery covered by the policy, then coverage

is triggered and the insurer has a duty to defend . . . . " *General Acc. Ins. Co. of America v. Allen*,

692 A.2d 1089, 1095 (Pa. 1997) (citing *Pacific Indem. Co. v. Linn*, 766 F.2d 754 (3d Cir. 1985)).

If the complaint in the underlying litigation alleges an injury that actually or potentially falls

within the policy's scope of coverage, the insurer is required to defend the insured until the claim

is confined to a recovery that is outside the scope of the policy.  *Erie Ins. Exch. v. Fidler*, 808

A.2d 587, 590 (Pa. Super. Ct. 2002) (citing *Germantown Ins. Co. v. Martin*, 595 A.2d 1172,

1175 (Pa. Super. Ct. 1991)).

     In determining whether the insurer has a duty to defend the underlying action, the court

must compare coverage afforded under the policy to the factual allegations contained in the four

corners of the underlying complaint.  *Mut. Benefit Ins Co. v. Haver*, 725 A.2d 743, 745 (Pa.

1999)); *see  Erie Ins. Exch. v. Claypoole*, 673 A.2d 348, 355 (Pa. Super. Ct. 1996) ("In such

actions, the allegations raised in the underlying complaint alone fix the insurer's duty to

defend").  Notably, the claim pled in the underlying complaint does not determine whether

coverage has been triggered.  *Haver*, 725 A.2d at 745; *Fidler*, 808 A.2d at  590.  "Instead, it is

necessary to look at the factual allegations contained in the complaint."  *Haver*, 725 A.2d at 745

(citing *Scopel v. Donegal Ins. Co.*, 698 A.2d 602 (Pa. Super. Ct. 1997); *Aetna Cas. & Surety Co.

v. Roe*, 650 A.2d 94, 98 (Pa. Super. Ct. 1994)). The insurer owes a duty to defend if the

complaint alleges facts which would potentially bring the claim within the policy's coverage, if

true. *Erie Ins. Exch. v. Muff*, 851 A.2d 919, 926 (Pa. Super. Ct. 2004) (citing *Roe*, 650 A.2d at

98).  If the factual averments in the underlying complaint trigger coverage, then the insurer has a

duty to defend "until such time that the claim is confined to a recovery that the policy does not cover."  *Allen*, 692 A.2d at 1095; *see Allstate Ins. Co. v. Brown*, 834 F.Supp. 854, 857 (E.D. Pa. 1993) (citing *United Servs. Auto. Assoc. v. Elitzky*, 517 A.2d 982, 985 (Pa. Super. Ct. 1986) (holding that, "so long as the complaint comprehends an injury which is potentially within the scope of the policy, the company must defend the insured until the insurer can confine the claim to a recovery that the policy does not cover").

In determining whether Economy Premier has a duty to defend the Fairfull Defendants in the Prodanovich litigation, the language of the policy must be compared with the factual allegations contained in the four corners of the complaint.  *Haver*, 725 A.2d at 745; *see Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir.1999) (citing *Erie Ins. Exch. v. Claypoole*, 673 A.2d at 355).  The Prodanovich complaint contains the following allegations:

> 4.   Plaintiff, Samantha Prodanovich, was born December 4, 1994, therefore at all times herein mentioned, she was a minor child being 8 years of age.
>
> 5.   At all times times relevant hereto, minor Plaintiff was allowed to play in Defendants' basement and had their permission to do so.
>
> 6.   At all times relevant, Defendant, Hillary Fairfull, owned, possessed and controlled a Chow/Akita dog which she knew or should have known was vicious, ferocious, aggressive, and prone to attack and/or bite people.
>
> 7.   In the alternative, Defendants Thomas Fairfull and Donna Fairfull owned, possessed and controlled a Chow/Akita dog which they knew or should have known was vicious, ferocious, aggressive and prone to attack and/or bite people.
>
> 8.   At all times relevant hereto, Defendants, Thomas Fairfull and Donna Fairfull, allowed the above referenced dog on their property,

16

specifically keeping said animal in their basement, and knew or should have known it was vicious, ferocious, aggressive, and prone to attack and/or bite people.

9.   At all times relevant hereto, Defendant Hillary Fairfull knew or should have known that the co-Defendants kept the dog in their basement and that they also allowed minor Plaintiff to play at their house in the same basement.

10.   On or about June 5, 2003, minor Plaintiff Samantha Prodanovich was an invited guest of Defendants, Thomas Fairfull and Donna Fairfull, on their premises located at 105 Oak Road, Westmoreland County, Trafford, Pennsylvania 15085 and was playing in their basement with their consent and permission.

11.   At or about the same time, Defendants, Thomas Fairfull and Donna Fairfull, allowed Defendant Hillary Fairfull's dog on their property and kept it in the same basement where minor Plaintiff was playing.

12.   Defendants Thomas Fairfull and Donna Fairfull did not provide adult supervision when minor Plaintiff was in their basement on the above date even though they were keeping co-Defendant Hillary Fairfull's dog there, which they knew or should have known that it had a dangerous propensity to be vicious, ferocious, aggressive, and prone to attack and/or bite people in the same basement.

13.   Defendants Thomas Fairfull and Donna Fairfull also failed to prohibit children from entering the basement when co-Defendant Hillary Fairfull's dog was kept in the basement, even though they knew or should have known that said animal had a dangerous propensity to be vicious, ferocious, aggressive, and prone to attack and/or bite people.

14.   On the above stated date, Defendant Hillary Fairfull knew her dog had a propensity to be vicious, ferocious, aggressive, and prone to attack and/or bite people, and that the dog was on the co-Defendants' property and knew or should have known that it was kept in their basement with the minor Plaintiff or had access to said minor Plaintiff.

15   While minor Plaintiff, Samantha Prodanovich played in the Defendants Thomas Fairfull's and Donna Fairfull's basement, Defendant Hillary Fairfull's Chow/Akita dog suddenly and without

17

> warning attacked minor Plaintiff, without provocation, biting her left
> cheek, her chin and her left jaw line.

(Doc. No. 37, Ex. A  ¶¶ 5-15).  Other allegations are that the dog bite resulted in injuries to

Samantha Prodanovich's person and damages in the form of medical expenses, "substantial

pain", "suffering and inconvenience", "loss of the enjoyment and pleasures of life", "substantial

physical disfigurement", "emotional, economic and physical harm"; and permanent scarring.  (*Id*.

¶¶ 16-17).

The policy provides coverage for liability for bodily injury as follows:

### Section II- LOSSES WE COVER

**COVERAGE F- PERSONAL LIABILITY**
> We will pay all sums for **bodily injury** and **property damage** to
> others for which the law holds **you** responsible because of an
> **occurrence**.  This includes prejudgment interest awarded against **you**.
>
> We will defend **you**, at our expense with counsel of **our** choice,
> against any suit or claim seeking these damages.  We may investigate,
> negotiate, or settle any suit or claim.

(Doc. No. 37, Ex. F at 16). "Bodily injury" is defined by the policy as:

> **"BODILY INJURY"** means any bodily harm, sickness or disease.
> This term includes required care, loss of services and death if it is a
> result of such bodily harm, sickness or disease. . . .

(Doc. No. 37, Ex. F at 1).

The parties do not dispute that the Prodanovich complaint contains allegations of bodily

injury, which would fall within the policy's coverage for personal liability.  The Prodanovich

complaint arguably triggers coverage.  Economy Premier argues that it is undisputed that

Samantha Prodanovich was not merely an "invited guest" of the Fairfull Defendants as the

Prodanovich complaint alleges, but was on the property to be baby-sat by Donna Fairfull which triggers both the business pursuits and day care exclusions of the policy.

Under Pennsylvania law, the duty to defend will remain with the insurer until sufficient facts become known to confine the claims to liability outside the scope of the policy. *Allen*, 692 A.2d at 1095; *see Muff*, 851 A.2d at 925-26 (citing *D'Auria v. Zurich Ins. Co.*, 507 A.2d 857, 859 (Pa. Super. Ct. 1986)); *Britamco Underwriters, Inc. v. Weiner*, 636 A. 2d 649, 651 (Pa. Super. Ct. 1994); *Cadwallader v. New Amsterdam Cas. Co.*, 152 A.2d 484, 488 (Pa. 1959). Here, it is undisputed that, at the time Samantha Prodanovich was bitten by the dog on the Fairfulls' property, she was there for the purpose of receiving Donna Fairfull's childcare services. (Doc. No. 51 ¶ 19).  Both Donna Fairfull and Tina McDonnell testified that Donna Fairfull regularly baby-sat Samantha Prodanovich, and was watching her on that date.  (Doc. No. 37, Ex. D at 31; Ex. E at 24).  Once it is demonstrated that an exclusion in the insurance policy applies, coverage is precluded. *Unionamerica Ins Co., Ltd. v. J.B. Johnson*, 806 A.2d 431, 434 (citing *Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363, 1368 (Pa. 1987)); *see Gardner*, 544 F.3d at 561 (citing *Cadwallader*, 152 A.2d at 488; *Belser v. Rockwood Cas. Ins. Co.*, 791 A.2d 1216, 1219-20 (Pa. Super. Ct. 2002)).[9]  There being no dispute that Samantha Prodanovich was at the Fairfull residence for the purpose of receiving childcare from Donna Fairfull, the issue to be resolved is whether either the business pursuits or day care exclusion applies here.

---

[9]

Economy Premier agreed to defend the Fairfull Defendants in the Prodanovich litigation, pursuant to a reservation of rights. (Doc. No. 1 ¶ 20).  There appears to be no dispute regarding the defense of the Prodanovich litigation until the filing of this declaratory judgment action.

### a.    *Application of the Business Pursuits Exclusion*

Economy Premier argues that the business pursuits exclusion applies to preclude

coverage for the Prodanovich litigation because Samantha Prodanovich's injures "arose out of"

the "business activities" of Donna Fairfull.  Defendants, in reply, argue that allegations of

negligence in the ownership of a household pet do not implicate that exclusion.  In cases

involving issues of insurance coverage, the insurer bears the burden of establishing that an

exclusion applies.  *Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir.

1996); *Harleysville*, 735 A.2d at 106.

The business pursuits exclusion provides:

**Section II- LOSSES WE DO NOT COVER**

**UNDER COVERAGE F- PERSONAL LIABILITY AND COVERAGE G- MEDICAL PAYMENTS TO OTHERS, WE DO NOT COVER:**

...

2.    **bodily injury** or **property damage** arising out of or in connection with **your business** activities.  This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the **business**.

With respect to Coverage F- Personal Liability, this exclusion does not apply to your occasional or part-time **business** activities if **you** are under 19 years of age or a full-time students under 21 years of age.

(Doc. No. 37, Ex. F at 17).  The policy defines "business" as

**"BUSINESS" or "BUSINESS PURPOSES"** means:
1. Any full or part time activity of any kind engaged in for economic gain, and the use of any part of any premises for such purposes. . . .

20

(Doc. No. 37, Ex. F at 1).[10]

In interpreting insurance policies, the language at issue is examined to determine whether an ambiguity exists. *Baumhammers*, 938 A.2d at 290 (citing *Kvaerner Metals*, 908 A.2d at 893). The term "business" in the policy is unambiguous, given that it is defined in the policy in plain terms as an activity "engaged in for economic gain." *See, e.g., Old Guard Ins. Co. v. Sherman*, 866 A.2d 412, 417 (Pa. Super. Ct. 2004) (citing *Travelers Indem. Co v. Fantozzi*, 825 F.Supp. 80 (E.D. Pa. 1993)) (finding that, where the policy's definition of "business" needed "no explanation as to its meaning or effect," it was unambiguous as a matter of law). Pennsylvania courts apply a two-prong test for determining whether activities are encompassed in the term "business pursuits." *See Sun Alliance Ins. Co. v. Soto*, 836 F.2d 834, 836 (3d Cir. 1987) (utilizing a two-prong test for determining whether an activity is a "business pursuit"); *White v. Keystone Ins. Co.*, 775 A.2d 812, 814 (Pa. Super. Ct. 2001) (citing *Fantozzi*, 825 F.Supp. at 85)) (adopting two-prong test for determining whether an activity is a "business pursuit"). The two prongs of the test are: "(1) continuity, and (2) a profit motive." *Fantozzi*, 825 F.Supp. at 85 (citing *Soto*, 836 F.2d at 836).

---

[10]

"The purpose of a 'business pursuits' exclusion is to help the insurer keep premiums at a reasonable level by eliminating a type of coverage that (1) normally requires specialized underwriting and rating, and (2) is not essential to most purchasers of the policy, and (3) is provided by other insurance contracts a business owner is likely to have."

*Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 437 (3d Cir. 2006) (quoting *Avoiding the "Business Pursuits" Exclusion-Insured's Activity as Not Business Pursuit*, 15 Am. Jur. 3d *Proof of Facts* 515 § 1 (2005)).

With respect to the first prong – continuity – Donna Fairfull testified that she watched children in her home for approximately ten years prior to the Prodanovich litigation. (Doc. No. 51 ¶ 21). She testified that, at the time of the incident involving Samantha Prodanovich, she regularly watched six or seven children in her home. (Doc. No. 37, Ex. D at 14). Donna Fairfull testified that she baby-sat Samantha Prodanovich Monday through Friday, before and after school for several months. (Doc. No. 51 ¶ 30). Given these facts, the court finds that there is no genuine issue of fact with respect to whether the continuity element of the business pursuits exclusion is met. *See Fantozzi*, 825 F.Supp. at 85 (citing *e.g.*, *U.S. Fidelity & Guar. Co. v. Heltsley*, 733 F.Supp. 1418, 1421 (D.Kan. 1990); *Burt v. Aetna Cas. & Sur. Co.*, 720 F.Supp. 82, 85 (N.D. Tex. 1989)) (finding the continuity element "clearly satisfied" where the homeowners took care of a child on a daily basis over the course of more than four years). The first prong is met.

With respect to the second prong – "profit" – "'profit motive may be shown by such activity as a means of livelihood, a means of earning a living, procuring subsistence or profit, commercial transactions or engagements.'" *Fantozzi*, 825 F.Supp. at 85 (quoting *Sun Alliance*, 836 F.2d at 836). Donna Fairfull testified that she was paid for her regular childcare services. (Doc. No. 51 ¶¶ 22). She testified that she reported her earnings as income to the IRS. (Doc. No. 51 ¶ 26). Donna Fairfull and Tina McDonnell testified that Donna Fairfull was paid for baby-sitting Samantha Prodanovich. (Doc. No. 37, Ex. D at 14; 7. Ex. E at 12, 9-12). Under those circumstances, the profit requirement is clearly met. *Fantozzi*, 825 F.Supp. at 85 (holding that, where the insureds were motivated to baby-sit by a desire for compensation, this element was met).

22

Based upon the undisputed testimony, Donna Fairfull's childcare services were "business pursuits" within the meaning of those terms in the policy.

Defendants argue that, even if Donna Fairfull's childcare services are considered a "business pursuit," the exclusion would not apply because Samantha Prodanovich's injuries were not a result of that business. Defendants argue her injuries were the result of an activity unrelated to her business, namely her ownership of a pet. If Samantha Prodanovich's injuries "arose from" Donna Fairfull's business, that argument would be without merit.

In interpreting insurance policy provisions, a court cannot read words in the insurance policy in a vacuum; rather, they are to be read in context of the entire contractual provision. *401 Fourth St.*, 879 A.2d at 172. Here, the exclusion will apply if Samantha Prodanovich's injuries arose out of or in connection with Donna Fairfull's business activities. (Doc. No. 37, Ex. F at 17). The terms "arising out of" or "in connection with" are not defined in the policy. Pennsylvania courts have determined that the term "arising out of" is unambiguous and indicates a "but for" or "cause and result" relationship" between the alleged injuries and the business activities of the insured. *Harleysville*, 735 A.2d at 110 (citing *McCabe v. Old Republic Ins. Co.*, 228 A.2d 901, 903 (Pa. 1967)); *see USX Corp. v. Adriatic Ins*. Co., 99 F.Supp. 2d 593, 627 (W.D. Pa. 2000) (citing *Roman Mosaic & Tile Co. v. Aetna Cas. & Sur. Co.*, 704 A.2d 665, 669 (Pa. Super. Ct. 1997)) (holding, "[i]n other words, 'construed strictly against the insurer, "arising out" means causally connected with, not proximately caused by'").

Here, Donna Fairfull's business was watching children on her property. At the time of the incident involving Samantha Prodanovich, the minor was at the Fairfull residence receiving Donna Fairfull's services. While under Donna Fairfull's care, Samantha was bitten by a dog that

23

was kept by the Fairfulls on the same premises.  Under these circumstances there is a causal

connection between Donna Fairfull's childcare business and the injury received while under her

care at the Fairfull residence.  But for Samantha Prodanovich being on the premises to receive

child care services, she would not have been bitten by the dog.  Therefore, Samantha

Prodanovich's injuries "arose from" Donna Fairfull's business pursuits.  *See, e.g., Still v. Great*

*Northern Ins. Co.*, Civil Action No. 07-339, 2007 WL 1244518, at *2 (E.D. Pa. 2007); *Fantozzi*,

825 F.Supp. at 85.  Finding that the underlying injuries arose from Donna Fairfull's business

pursuits means that the business pursuits exclusion applies to this case, precluding coverage.[11]

> **b.      Whether the Exclusions Apply to Thomas and Hillary Fairfull as Well as Donna Fairfull**

Defendants make a further argument regarding the business pursuits exclusion.

Defendants contend that, regardless whether Samantha Prodanovich's injuries arose from Donna

Fairfull's business pursuits, coverage is not precluded for Thomas and Hillary Fairfull.  (Doc.

No. 43 at 8-9).

---

[11]

Defendants cite *Bullock v. Pariser*, 457 A.2d 1287 (Pa. Super. Ct. 1983), to support their position.  In *Bullock*, the issue was whether a dog kept at the insured's day care center (a location separate from the insured property) was a "business pursuit" within the meaning of the homeowners' insurance policy.  *Id*. at 1289.  The policy in that case, unlike the policy here, had an exception to the business pursuits exclusion for "an activity ordinarily incident to non-business pursuits."  *Id.*  The court found the meaning of "business pursuits" to be unambiguous, the activity of keeping the dog at the day care center to provide security was within the exclusion and the exception did not apply.  *Id*. at 1289-90.  In this case there is no similar exception to the business pursuits exclusion and the court need only consider whether the injury arose out of or in connection with Donna Fairfull's business activities.  *Bullock* simply did not address the issues raised here or the facts of this case.

24

The business pursuits exclusion precludes coverage for bodily injury arising out of "your business activities." (Doc. No. 37, Ex. F at 17).  The term "your" is defined in the policy as follows:

> YOU" and **"YOUR"** mean:
>
>> 1.  the person or persons named in the Declarations and if a resident of the same household:
>>> A.  the spouse of such person or persons;
>>> B.  the relatives of either;
>>> C.  any other person under the age of twenty-one in the care of any of the above . . . .

(Doc. No. 37, Ex. F at 2). The policy unambiguously identifies "you" and "your" as the insured named on the declarations page and any resident of the house that is a relative of the named insured or insureds.  (*Id*.)  `The plain and unambiguous language of the policy cannot be tortured to preclude the application of the exclusion.  *Curbee, Ltd.*, 594 A.2d at 735.  Here, the Prodanovich Defendants brought an action against the insured named on the declaration page, Thomas Fairfull. (Doc. No. 37, Ex. A, Ex. B).  Donna Fairfull and Hillary Fairfull are named defendants.  (Doc. No. 37, Ex. A).  There is no dispute that Donna and Hillary Fairfull were residents of the insured property and relatives of the named insured, Thomas Fairfull, at the time of the incident giving rise to the Prodanovich litigation. Therefore, "you" and "your" applies to Thomas, Donna and Hillary Fairfull.

With respect to the nature of the obligations binding on an individual defined as "you" in the policy, the policy provides:

> INSURANCE AGREEMENT AND DECLARATIONS
>
>> ...

25

> The terms of this policy impose joint obligations on all persons defined as **"you"**. This means that the responsibilities, act and failures to act of a person defined as "you" will be binding upon another person defined as **"you"**.

(Doc. No. 37, Ex. F at 1).

Under that language, the business pursuits exclusion unambiguously applies to all three Fairfull Defendants in the Prodanovich litigation.  In Pennsylvania, where a policy unambiguously applies jointly to co-insureds, an exclusion in the policy that applies to one insured will apply to all co-insureds, even if the co-insureds are innocent parties.  *Kundahl v. Erie Ins. Group*, 703 A.2d 542, 544 (Pa. Super. Ct. 1997) (citing *McAllister v. Millvale Mut. Ins. Co.*, 640 A.2d 1283 (1994)); *cf Maravich v. Aetna Life & Cas. Co.*, 504 A.2d 896 (Pa. Super. Ct. 1986).  Because the business pursuits exclusion applies to preclude coverage for Donna Fairfull, it likewise applies to preclude coverage for Thomas and Hillary Fairfull.

### c.   Whether the Day Care Exclusion Applies to Defense of the Fairfull Defendants in the Prodanovich Litigation

In its motion for summary judgment, Economy Premier argues that the day care exclusion in the policy applies, excluding coverage.  Defendants argue that this exclusion does not apply because the Prodanovich litigation did not arise from Donna Fairfull's childcare services and Samantha Prodanovich's injuries did not result from the operation of the childcare services.

The day care exclusion provides:

> 3.   **your** legal liability to any person resulting from **your** regular care of one or more persons  anywhere for economic gain and regardless of whether such care or premises is licensed or not. The mutual exchange of home day care services is not considered to be for economic gain. This exclusion does not apply to **your** occasional care or babysitting.

26

(Doc. No. 37, Ex. F at 17).

The language of the day care exclusion is different than the language of the business pursuits exclusion.  The issue under the day care exclusion is whether Samantha's injuries "resulted from" the regular care of Samantha Prodanovich.  In Pennsylvania, the term "resulting from" is *not* a but-for causation; rather, Pennsylvania courts have held that "resulting from" refers to a proximate cause relationship between the insured's care of the child and the injuries. *See Jefferson Bank v. Progressive Cas. Ins. Co.*, 965 F.2d 1274, 1281 (3d Cir. 1992) (citing *Whitner v. Von Hintz*, 263 A.2d 889, 893-94 (Pa. 1970)).

Pennsylvania courts have not interpreted this particular exclusion in an insurance policy. As such, this district court would be tasked to predict the ruling of the Pennsylvania Supreme Court, in light of the facts of the case and Pennsylvania laws of construction.  *See Whole Enchilada Inc. v. Travelers Prop. Cas. Co. of America*, 581 F.Supp. 2d 677 (W.D. Pa. 2008).  It is not necessary for this court to undertake that endeavor, however, because the business pursuits exclusion unambiguously applies.

### *Duty to Indemnify*

An insurer's duty to indemnify is narrower than its duty to defend.  *Kvaerner*, 908 A. 2d at 745 n.7 (citing *Allen*, 692 A. 2d at 1095)).  Although the insurer's duty to defend is separate and broader than the duty to indemnify, both flow from a determination that the underlying complaint triggers coverage. *Allen*, 692 A.2d at 1095.  An insurer will have a duty to indemnify "only where the insured is held liable for a claim actually covered by the policy."  *USX Corp. v. Adriatic Ins. Co.*, 99 F.Supp.2d 593 (W.D. Pa. 2000) (citing *Allen*, 692 A.2d at 1095).  Hence,

27

when the court finds that there is no duty to defend (*i.e.*, no possibility of coverage under the terms of the policy), the policy will also preclude a duty to indemnify.  *Kvaerner*, 908 A. 2d at 896 n.7 (citing *Scopel v. Donegal Mut. Ins. Co.*, 698 A.2d 602, 605 (Pa. Super. Ct. 1997)).

Having found that there is no duty to defend because the business pursuits exclusion applies in this case, the court finds that there likewise is no duty to indemnify.  *See Kvaerner*, 908 A.2d at 900 (holding that, where there is no duty to defend, there is no duty to indemnify).

### Conclusion

For the reasons set forth above, Economy Premier's motion for summary judgment is granted.  An appropriate order will follow.

By the court,

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge

Dated: February 23, 2010

28